JAMES H. MADDEN *et al. vs.* ZONING BOARD OF REVIEW OF CITY OF PROVIDENCE.

MARCH 9, 1927.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

(1)  *Zoning Law.  Review.  Special Interest.  Adjoining Owners.  Certiorari.*

Adjoining owners to the property in question have a special interest sufficient to entitle them to petition for a writ of *certiorari* to review proceedings of a zoning board of review.

(2)  *Zoning Law.  Size of Building.*

It appears that there is no exact and universal definition of a two and one-half story building in common usage.  The question is technical and one of fact.

(3)  *Zoning Law.  Size of Building.*

Where the opinion of experts was practically unanimous as to the size of a building and this agreed with the decision of the Zoning Board of Review, a quasi judicial body, the court does not feel warranted in reversing the decision of the Board.

CERTIORARI to Zoning Board of Review.  Decision of Board of Review affirmed.

STEARNS, J.  *Certiorari* to the Zoning Board of Review of the city of Providence.

The petitioners for the writ own a two family dwelling house on Landor street, in an apartment house district in Providence.  In 1925 Samuel Bomes bought the adjoining lot north of the Madden lot and in 1926 he obtained a permit from the city inspector of buildings to erect thereon a three story dwelling house.  After the cellar had been dug and the basement walls had been built, petitioners brought a suit in equity against Bomes to determine the boundary line between the two lots.  As a result of this suit Bomes lost and petitioners acquired a strip of land two feet wide on the boundary line.  This reduction in the open space in the side yard between the two buildings forced Bomes to have new plans made for his building, to meet the requirements of the Zoning Ordinance.  These plans were approved by the building inspector and a second permit to

build was granted to Bomes. This permit authorized the construction of a building with a gambrel roof, of two and one-half stories in height, to be used for a dwelling house with three tenements therein, to be built four feet distant from the adjoining lot line and six feet from the adjoining building.

Petitioners appealed to the Zoning Board of Review from this action of the building inspector. After a hearing, in which the owners of the two lots were represented by counsel, the appeal was denied by the Board and this petition was then brought.

Pursuant to the mandate of the writ of *certiorari*, the records and a statement of the proceedings of the Board were certified to this court, and Samuel Bomes and his wife were summoned to appear as parties in interest.

Counsel for Bomes claims that petitioners, the adjoining owners, have no legal standing in this proceeding, that they are not "persons aggrieved" within the statutory meaning. In the original act authorizing cities to enact zoning ordinances (P. L. 1921, C. 2069), it was provided that the enforcement of such ordinances should be by proceedings in the Supreme or Superior Court in the name of the city by its city solicitor. Chapter 430, P. L. 1923, authorized the creation by city councils of Boards of Review. By Chapter 643, P. L. 1925, the provisions of the Zoning Act were made applicable to all towns and cities, with the mandatory provision that any zoning ordinance must provide for a Board of Review in the manner prescribed in G. L. 1923, C. 57 and amendments thereto. By Chapter 57 a Board of Review is empowered to administer oaths, to compel the attendance of witnesses and is required to keep public records of its proceedings. Appeals to the Board may be taken by any person aggrieved or by any municipal officer or department affected by any decision of an administrative officer. The Board is required to give public notice of a hearing on the appeal, also due notice to the parties in interest; after hearing had, the Board may affirm or reverse

wholly or partly the order appealed from. It is further provided that any person aggrieved by any decision of the Board or of any officer or board of the municipality, may petition the Supreme Court for a writ of *certiorari* to review any such decision; this court, if necessary, may order further testimony to be taken and may affirm, reverse or modify the decision brought up for review. By Sec. 2 of the act, it is provided that upon written protest by the owners of twenty per centum or more of the street frontage of the property to be affected by any proposed change either in the zoning ordinance or district or of the owners of the street frontage opposite or of property abutting on the boundary line, a three-fifths vote of the city council and the approval of the mayor is required to annul or repeal a zoning ordinance.

(1) In these and other provisions of the statute there is a recognition by the legislature that the owners of land which it is proposed to include in a particular zone and owners of land in an established zone, the character of which is to be changed, have a special interest in the subject matter which entitles them to a hearing before the Board and, if dissatisfied with its decision, to petition for a review of the proceedings by *certiorari*. Such a special interest in an adjoining owner was upheld in *Richard* v. *Zoning Board of Review*, 47 R. I. 102, although the question was not contested in that case.

In *Newell* v. *Franklin et al, Commissioners*, 30 R. I. 258, it was held that owners of real estate and taxpayers in two cities which were to be connected by a proposed bridge had a special interest in the subject matter sufficient to enable them to petition for a writ of *certiorari* to review the proceedings of such commissioners.

The interest of the municipality and the individual owner may often be opposed. In such a case justice requires that the owner of land which may be affected by the proposed action as well as the municipality should have an opportunity to be heard on the question of the legality of the

proceedings which are objected to.    The petition is properly brought in this case.

(2) The question in issue is, whether the proposed building is more than two and one-half stories in height.    Section 15 of the Zoning Ordinance of Providence provides that in a dwelling house or apartment house district there shall be a side yard along each lot line not less than three feet wide; and when the proposed building is more than two and one-half stories in height the minimum width permissible shall not be less then one-sixth of the height of the building.    As the proposed building is thirty-one feet in height, if it is more than a two and one-half story house the required width of the side yard would be over five feet.    If the house is not more than two and one-half stories in height the width of the side yard is sufficient.

The proposed building is to be a three family house.    The first two apartments above the ground floor are each eight feet nine inches in height; the apartment on the third floor is of the same height and has the same number of rooms as the two lower apartments, but its floor area is substantially less than in the other apartments.    Above the top apartment there is a loft under a sloping roof.    The gambrel roof has dormer windows; it extends to the eaves at the top of the second floor and is modified and cut off in part above the second floor.    What is a story or a half story is not determined by definition, in the statute or zoning ordinance, nor is the height of either fixed by law.    In Webster's New International Dictionary a "story" is defined as a set of rooms on the same floor or level; as a floor on the habitable space between two floors; also a horizontal division of a building's exterior considered architecturally, which need not correspond exactly with the stories within; a "mezzanine story" is a partial low story introduced in the height of a main story; the "attic story" includes all the rooms immediately below the roof.    With these definitions in mind, it appears that there is no exact and universal definition of a two and one-half story building in common usage.    The

question is technical and one of fact. From the testimony of contractors and builders given at the hearing in this court, it appeared that there was some difference of opinion among the expert witnesses on this question. But, with one exception, all of the witnesses agreed that the proposed structure was considered in the building trades to be two and one-half stories in height. The building from an inspection of the plans looks like a three story building. But in view of the almost unanimous opinion of experts in the building trade and of the decision of the Board of Review, which is a *quasi* judicial body, we do not think we are warranted in disregarding what appears to be the established meaning in this community of the phrase in question. Our conclusion is that the proposed building is not over two and one-half stories in height.

The decision of the Zoning Board of Review is affirmed.

*William S. Flynn, Edmund W. Flynn,* for petitioners.

*McGovern & Slattery,* for respondents Bomes.

*Ellis L. Yatman, Asst. City Solicitor,* for Zoning Board.