JOSEPH F. FLYNN *vs.* ZONING BOARD OF REVIEW OF THE CITY OF PAWTUCKET.

JUNE 9, 1950.

PRESENT: Flynn, C.J., Capotosto, Baker, Condon and O'Connell, JJ.

FLYNN, C. J. This is a petition for certiorari seeking to have this court reverse a decision of the respondent board granting an application for an exception or variance from the provisions of the zoning ordinance of the city of Pawtucket so as to permit certain land located in a residential zoning district to be used for retail business purposes. Pursuant to the writ the respondent board has certified to this court the records pertaining to the decision, including a transcript of evidence taken at the hearing on the application.

It appears that Frank F. Crook, hereinafter called the applicant, is the owner of a large unimproved parcel of land situated on Newport avenue in the city of Pawtucket. The land fronts on the easterly side of Newport avenue about 715 feet and extends back easterly therefrom about 600 feet on Waterman street which bounds it on the north and about 500 feet on Gates street which bounds it on the south. This whole parcel, containing approximately 419,532 square feet, is located in a residence B district under chap. 312, sec. 4. A., of the zoning ordinance of the city of Pawtucket approved February 22, 1928.

The following uses are permitted in such district: "(1) Any use permitted in this ordinance in any Residence A

District. (2) A detached house for two housekeeping units only, or a semi-detached house for two housekeeping units only. (3) Apartment house, boarding house, or hotel, *as defined* in the Building Ordinance. There shall be no display advertising exhibited except a small announcement sign on the building, and no public restaurant or dining room except as an accessory use. (4) A gasoline filling station or a stable, *if approved* by the Board of Review. (5) An aeroplane landing field, airship hangar, and accessory buildings and structures, *if approved* by the Board of Review." (italics ours)

Apparently for more than ten years this general neighborhood has been developing increasingly and solely for residential purposes. Only three nonconforming uses are located within an extensive surrounding area and apparently they were in existence before the ordinance was adopted. There is a retail shopping district at the corner of Newport avenue and Armistice boulevard which is about 1000 feet to the north of applicant's land.

The applicant requested an exception or variance to permit a large portion of the above-described parcel of land to be used for the building of three one-story retail stores with provision for the privilege of parking about 340 automobiles between the buildings and in the rear thereof. The land thus proposed for a retail business use measures 715 feet on Newport avenue and extends back easterly 200 feet on Waterman and Gates streets respectively and contains about 143,000 square feet in area. According to the proposed plan one store would be located on Newport avenue approximately in the center and a similar store would be built on that avenue at each side of the land. The application also contained a request for permission to group these three buildings into one large building in the center if later this was desirable.

At a hearing on the application duly held by the board, no person appeared in favor of granting it except the applicant's attorney who explained the accompanying plan

for redevelopment and the proposed use. However, several owners of dwelling houses in the same zoning district and in the immediate neighborhood appeared to oppose the granting of the application. Their objections were based upon different grounds, as for example, among others, that the application in effect sought a rezoning of the residence B district; that it was spot zoning for the applicant, which was not open to the other owners; that it would increase traffic hazards on Newport avenue and the side streets, especially in the season when racing was held at nearby Narragansett Park; that it would unreasonably transform the general character of the neighborhood into a business area with large parking facilities, thus depreciating the value of the existing dwellings and making the section undesirable for residential purposes as originally intended and zoned; and that it effectually would cause a breaking down of the residential zoning restrictions and thus defeat the purpose of the act.

The board thereafter visited certain neighborhood retail store developments in parts of Providence, Rhode Island, and Brookline, Massachusetts, and upon consideration by unanimous vote granted the application "with the following restrictions: (1) The single story buildings will be grouped into one building equidistant from Waterman Street and Gates Street; (2) That a barrier be erected along the westerly line of Benjamin Street continued, the barrier to be approved by the Board."

The petitioner here is one of the remonstrants who personally appeared at the hearing and opposed the granting of the application. He specifically alleges in the petition and now contends that the provisions of the zoning ordinance, sec. 16, subsec. (8), under which the respondent board purported to act in granting an exception, is invalid and void on the ground that it is an improper redelegation of legislative power by the city council to the board; that the board therefore was without jurisdiction to grant this application for an *exception* because in effect it requested

a permit to rezone from residence to business a large district containing the equivalent of twenty-eight standard size house lots as shown on the surrounding plat, whereas such a change in the zoning district could properly be made only by the city council in the exercise of its legislative power in accordance with the enabling act; and that even if the board is assumed to have jurisdiction the decision, whether on the basis of an exception or variance, is not supported by evidence, is contrary to the general purpose and other provisions of the act, and therefore is arbitrary and an abuse of discretion.

The respondent contends first, that the petitioner is not an aggrieved person entitled to have a review of this decision; secondly, that the provision of the ordinance in question, if properly construed, is a valid delegation of authority to the respondent board to act within general limitations; and finally, that its decision is supported by evidence and is not arbitrary or an abuse of discretion.

In relation to respondent's first contention, neither the enabling act nor the zoning ordinance describes precisely who is an aggrieved person for the purpose of bringing a petition for certiorari to have such a decision reviewed by this court. But generally speaking the owner of property, the use of which naturally would be affected adversely by a decision granting an exception or variance, is considered to be an aggrieved person having a right to such a review. *Madden* v. *Zoning Board of Review*, 48 R. I. 175. See also *Buckminster* v. *Zoning Board of Review*, 69 R. I. 396, and *M. & L. Die & Tool Co.* v. *Board of Review*, 76 R. I. 417. In the instant case it appears that petitioner lives in his own house which is located within a street or two of applicant's land and is in the same established residential zoning district. In our opinion the nature and extent of the proposed change is such that it naturally and reasonably would affect the value and use of property in the immediate vicinity. The petitioner therefore is an aggrieved person having a right to claim a review of the board's decision.

The question raised by respondent's second contention is whether sec. 16, subsec. (8), of the ordinance is a valid grant of power by the council to the respondent board. This is the first time, so far as we are informed, that the legality of that or any similar provision of a zoning ordinance has been properly before this court for determination. In previous cases the legality of such provision of the ordinance was conceded, as in *Harrison* v. *Zoning Board of Review,* 74 R. I. 135, and *Roberts* v. *Zoning Board of Review,* 60 R. I. 202; or was not properly raised in and by the petition, as in *Jacques* v. *Zoning Board of Review,* 64 R. I. 284; or was not open to challenge by a petitioner because he had directly invoked the exercise of the board's discretion by an application under the ordinance, as in cases like *Heffernan* v. *Zoning Board of Review,* 49 R. I. 283, *Heffernan* v. *Zoning Board of Review,* 50 R. I. 26, and *Jacques* v. *Zoning Board of Review, supra.*

In the instant case, however, the validity of sec. 16, subsec. (8), of the zoning ordinance and the board's jurisdiction thereunder to grant an exception were questioned implicitly by remonstrants at the hearing on the application and are expressly challenged in the instant petition. It therefore becomes necessary to determine the validity of that section of the ordinance, the pertinent portion of which reads as follows: "Such Board of Review, after notice and hearing, may in a specific case and subject to appropriate conditions and safeguards, determine and vary the application of the regulations herein established in harmony with their general purposes and intent as follows: * * * (8) Approve in any district an application for any use or building deemed by the said Board to be in harmony with the character of the neighborhood and appropriate to the uses or buildings permitted in such district."

The power of the city council to enact the ordinance containing a provision granting to the board authority to make an exception to the literal terms of the ordinance is derived from general laws 1938, chapter 342. Section 8

124

thereof, after providing that a board of review shall be established, provides "that said board of review may, in appropriate cases and subject to appropriate conditions and safeguards, make special exceptions to the terms of the ordinance in harmony with its general purpose and intent and in accordance with general or specific rules therein contained, or where such exception is reasonably necessary for the convenience or welfare of the public. * * * The board of review shall have the following powers: * * * b. To hear and decide special exceptions to the terms of the ordinance, upon which such board is authorized to pass under such ordinance."

It is true that the authority to grant an exception under paragraph b is distinguishable from that given to the board in the next paragraph c under which the board may grant a *variance* where owing to special conditions a literal enforcement of the provisions of the ordinance will result in unnecessary hardship. *Harrison* v. *Zoning Board of Review, supra.* In our opinion, however, the legislature never intended to permit the board to be clothed with blanket authority to exercise the legislative power which had been delegated to the council by the enabling act. The discretionary power of the board to grant an exception in special cases provided for in the ordinance was intended to provide reasonable flexibility to relieve against arbitrary effects that might follow from a literal enforcement of the terms thereof. *East Providence Mills, Inc.* v. *Zoning Board of Review,* 51 R. I. 428; *Costantino* v. *Zoning Board of Review,* 74 R. I. 316.

The case of *East Providence Mills, Inc.* v. *Zoning Board of Review, supra,* provides a good example of the proper application of the power to grant an exception. There the zoning boundary line was drawn so as to divide the applicant's property which apparently was being used as a unit. That was so unnecessary for the general purpose of zoning and so arbitrary in its effect upon an existing use as to amount to unreasonable hardship and by itself

to be a ground for granting an exception. Moreover we have also pointed out that the power to grant exceptions in special cases under the ordinance was intended to be exercised *sparingly* lest the power be abused. *Costantino* v. *Zoning Board of Review, supra.*

In the instant case the validity of sec. 16, subsec. (8), of the ordinance is attacked directly on the ground that by the enabling act the legislature delegated a portion of its police power to the city council and that the council alone was required to exercise that power. Petitioner further argues that the council should have provided expressly in the ordinance for the special cases in which an exception could be granted, or at least should have set forth reasonably definite rules, standards or limitations in accordance with which the board could then exercise a sound discretion; and that the attempt to redelegate all such legislative power to the board to be exercised according to the latter's unrestricted judgment was invalid.

In our opinion the petitioner's argument is well founded. Section 16, subsec. (8), of the ordinance is clear and unambiguous. Therefore it needs no construction as the respondent contends. The council provided therein no rules or regulations, specific or general, that fix any limitation upon the exercise of the board's discretion. On the contrary it passed on to the board the complete power which it had received from the legislature under the enabling act. By virtue of this provision the council purported to authorize the board not only to exercise its discretion on any application for exception, whether or not it was a special case under the ordinance as contemplated by the act, but also empowered the board to fix the limits of that discretion as it deemed desirable in accordance with its own undisclosed standards and unqualified judgment. This power belongs to the council. Its unrestricted exercise here by the board results in unreasonable and unnecessary spot zoning, and in effect changes boundary lines of an existing zoning district, changes substantially the

character of a well-established residential neighborhood, and thereby is contrary to rather than in harmony with the general purposes of the act and ordinance.

It is clear that the board considered it had such unlimited discretion and that it acted accordingly. The decision points out that no person has challenged this section of the ordinance since its adoption in 1928; that the council has never seen fit to change the terms; and that in the board's judgment progressive planning for the city, which it then describes and undertakes to carry out, warrants the present use of this section for retail business purposes and the parking of large numbers of automobiles, because the location is one of the few places in the city where such an enterprise can be undertaken without moving buildings. Such planning appears to us to be the function of the council, especially if as here it substantially changes zoning district lines.

The board further interprets the recent case of *Harrison* v. *Zoning Board of Review, supra,* as approving the validity of sec. 16, subsec. (8), and the application of such extensive power in granting exceptions. In this respect it misconceives the essential scope and limitation of that opinion and overlooks our language. There at page 141 we expressly pointed out that "The power of the board under that section and subsection is very broad. Whether it goes beyond what the legislature intended when it authorized the local legislative body to provide by ordinance for the granting of exceptions in special instances therein set out we do not inquire, as the petitioners here have not questioned the validity of the ordinance but only the exercise of the board's discretion under it." We therefore were constrained to consider that case as if the provisions there in question, including sec. 16, subsec. (8), were in all respects valid in law. *Upon that assumption* the ordinance plainly conferred such a broad and unqualified discretion on the board that it was difficult to say there was an abuse thereof. However, several times in `the opinion we ex-

pressly or indirectly used language which was intended to caution that the issue as thus presented should not be mistaken or enlarged, as the board apparently has done in its interpretation thereof and in its decision of the instant case.

In the circumstances the case of *East Providence Mills, Inc.* v. *Zoning Board of Review, supra,* would have been more helpful as a guide. There the court apparently intended to exclude from the scope of its approval an application for an exception which might be based upon facts such as are presented in the instant case. In distinguishing the exception granted in the *East Providence Mills, Inc.* case from others the court at page 432 not only pointed out the unreasonable and unnecessary restriction on the use of the applicant's land, but also stated significantly: "This is not an application by the owner of land in a residential district to secure an exception whereby he may introduce a new business use into a restricted zone." In our opinion the instant case presents precisely that kind of an application so that it comes within the implicit disapproval of the above-quoted language as to the intent of the enabling act in relation to the power to grant an exception.

The petition for certiorari is granted, the decision of the respondent board is reversed, and the papers in the case which have been certified to this court are ordered sent back to the respondent board.

*Corcoran, Foley & Flynn, Joseph F. Flynn, Stanley Bednarczyk,* for petitioner.

*Crowe & Hetherington,* for respondent.